AO 106 (Rev. 04/10) Application for a Search Warrant

Case 3:19-mj-02162-LL   Document 1   Filed 05/23/19   PageID.1   Page 1 of 17

FILED

MAY 2 3 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )     Case No.   **19MJ2162**
)
LG Stylo 4 cellphone, Model: Q710MS, )
IMEI: 351603101682983 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952, 960, 963 | Importation of a Controlled Substance; Conspiracy to Import Controlled Substances |

The application is based on these facts:

See attached Affidavit of Special Agent Christopher Mackes

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Christopher Mackes, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/23/19

*Judge's signature*

City and state: San Diego, CA     Honorable Judge Linda Lopez
*Printed name and title*

# ATTACHMENT A

PROPERTY TO BE SEARCHED

A LG Stylo 4 Model #: Q710MS and IMEI #351603101682983; currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the Subject Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Subject Telephone. The seizure and search of the Subject Telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Subject Telephone will be electronic records, communications, and data such as emails, text messages, messages from text messaging applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, audio files, videos, and location data, for the period of December 7, 2018, up to and including February 14, 2019:

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    h.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 and 960.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.

# AFFIDAVIT IN SUPPORT OF APPLICATION
# FOR SEARCH WARRANT

I, Christopher Mackes, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations for the following target property:

An LG Stylo 4 with Model # Q710MS and IMEI# 351603101682983 ("TARGET TELEPHONE")

2. The TARGET TELEPHONE was seized from defendant MICHAEL PERKINS on or around February 13, 2019, when he entered the United States from Mexico at the San Ysidro, California Port of Entry driving a 2012 Dodge Ram 1500 concealing approximately 22.72 kilograms (50.08 pounds) of methamphetamine. It is believed that the TARGET TELEPHONE was used by PERKINS and his co-conspirators during a drug smuggling event on February 13, 2019. He has been charged by information with importation of a controlled substance (methamphetamine) in violation of Title 21, United States Code sections 952 and 960 in the Southern District of California in case number 19-CR-00855.

3. The TARGET TELEPHONE is currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

4. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the items to be seized set forth in Attachment B (incorporated herein) will be found in the item to be searched as described in Attachment A (incorporated herein). These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952 and

AFFIDAVIT IN SUPPORT OF APPLICATIONS   1
FOR SEARCH WARRANTS

960, and (2) property designed or intended for use, or which is or has been used as a means of committing criminal offenses. I seek authority to search the TARGET TELEPHONE and to seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference), for the time period from December 7, 2018 up to and including February 14, 2019.

**TRAINING AND EXPERIENCE**

5. I am a Special Agent Criminal Investigator (SA) employed by United States Homeland Security Investigations (HSI), which is a component agency of the Department of Homeland Security. I have been employed by HSI since January 2016. My formal training has consisted of approximately 1,000 hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia, which included training related to narcotics and dangerous drugs. As a Special Agent, I have conducted numerous investigations and seizures of drugs and currency from drug trafficking organizations operating in the area. I am currently assigned to San Ysidro Contraband Smuggling group 5 (CS5), and I have been in that position since August 2016. My training as a Special Agent includes Tactics used by drug smuggling organizations. Additionally, through the course of my duties as a Special Agent, I have talked with other experienced narcotics investigators and received informal training regarding illegal drug trends and methods of operation for multi-kilogram drug dealing and trafficking in and around San Diego, California.

6. From January 2007 until January 2016, I was assigned as a U.S. Border Patrol Agent at the Imperial Beach Border Patrol Station, in San Diego, California. While serving in the Border Patrol, I was also assigned to the Targeted Enforcement Unit (TEU) and the Maritime Taskforce (MTF), an investigative HIDTA team that routinely investigated narcotic smugglers and transnational criminal organizations. As a Border Patrol Agent, I

assisted in numerous interdictions and seizures of drugs and currency from drug trafficking organizations operating in the area.

7. Based on my training and experience as a HSI Special Agent, as well as my training and experience as a U.S. Border Patrol Agent, I am familiar with the ways in which drug smugglers and traffickers conduct their business. Indeed, during the course of my duties I have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

8. I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a Special Agent, and consultations with other law enforcement officers, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

3

  b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

  c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

  d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

  g. Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

  10. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

4

investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a.    tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

    c.    tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

    d.    tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

    e.    relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

    f.    tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    g.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    h.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

11. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this

investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

12. On February 13, 2019, at approximately 5:54 a.m., PERKINS, applied for entry into the United States from Mexico through the San Ysidro, California, Port of Entry ("POE") in the vehicle lanes. PERKINS was the driver, sole occupant, and registered owner of a silver 2012 Dodge Ram 15 bearing California license plates CA 94881D1 ("the vehicle"). U.S. Customs and Border Protection Officers ("CBPOs") conducted the pre-primary/primary inspection of PERKINS and the vehicle. PERKINS made two negative customs declarations.

13. In secondary inspection, CBPOs opened the vehicle's dashboard and discovered several packages containing a white, crystal like substance. CBPOs removed a total of 45 packages, the contents of which field tested positive for methamphetamine. In total CBPOs removed 22.72 kilograms (50.08 pounds) of methamphetamine from the dashboard of the vehicle.

14. Officers placed PERKINS under arrest for violating Title 21, United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance. TARGET TELEPHONE was seized upon PERKINS' arrest.

15. Based upon my experience and investigation in this case, I believe that PERKINS, as well as other persons as yet unknown, were involved in an on-going conspiracy to import methamphetamine or some prohibited narcotics. Based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

16. Based upon my training and experience, I am also aware that drug traffickers will often develop a crossing history of crossing from Mexico into the United States before crossing with a drug-laden vehicle. Border crossing records indicate that PERKINS successfully crossed twenty-three times between December 7, 2018 and the date of his arrest. Prior to February 13, 2019, PERKINS most recently crossed on February 9, 2019. Given these facts, I respectfully request permission to search TARGET TELEPHONE for data beginning on December 7, 2018, up to and including February 13, 2019.

17. Based on my experience investigating narcotics smugglers, I also believe that PERKINS may have used the TARGET TELEPHONE to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

7

(email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

18. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of PERKINS and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the TARGET TELEPHONE has been in the custody of HSI since the date of PERKINS' arrest, I believe that this information continues to be stored on the TARGET TELEPHONE.

## SEARCH METHODOLOGY

19. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure

environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

20. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

21. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

22. Based on all of the facts and circumstances described above, there is probable cause to believe that PERKINS used the TARGET TELEPHONE to facilitate the offenses of importing distributing methamphetamine. The TARGET TELEPHONE was likely used to facilitate the offenses by transmitting and storing data, which

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

9

constitutes evidence and instrumentalities of violations of Title 21, United States Code, Sections 952 and 960.

23. Because the Target Device was promptly seized during the investigation of PERKINS' smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by PERKINS continues to exist on the TARGET TELEPHONE. As stated above, I believe that the date range for this search is from December 7, 2018 up to and including February 14, 2019.

24. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

CHRISTOPHER MACKES
HSI Special Agent

Subscribed and sworn to before me this 23 day of May, 2019.

HON. LINDA LOPEZ
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

10

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

A LG Stylo 4 Model #: Q710MS and IMEI #351603101682983; currently in the possession of the Department of Homeland Security, Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, CA 92101 (Seized Property Vault).

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the Subject Telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Subject Telephone. The seizure and search of the Subject Telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the Subject Telephone will be electronic records, communications, and data such as emails, text messages, messages from text messaging applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, audio files, videos, and location data, for the period of December 7, 2018, up to and including February 14, 2019:

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico into the United States;

c. tending to identify payment, payment methods, or other monetary transactions relating to importing controlled substances from Mexico to the United States;

d. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico into the United States;

e. relating to the purchase of vehicles to import methamphetamine or some other controlled substance from Mexico into the United States;

f. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

g. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

    h.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Section 952 and 960.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.